IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PHILIP ASTRAUSKAS, SR., MARY ASTRAUSKAS, and PHILIP ASTRAUSKAS, JR., <br><br> **Plaintiffs,** <br><br> v. <br><br> CITY OF COLLINSVILLE, a Municipal Corporation, DONNA GREEN, DAVID JEROME, DANIEL DAVIS, JEFF STEHMAN, CHERYL BROMBOLICH, MITCHELL BAIR, DAVID BOOKLESS, RANDY TEDESCO, and JOHN MILLER, <br><br> **Defendants.** | Case No. 18-CV-01284-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment ("MSJ") and memorandum in support filed by Defendants City of Collinsville, Illinois ("Collinsville"), Donna Green, David Jerome, Daniel Davis, Jeff Stehman, Cheryl Brombolich, Mitchell Bair, David Bookless, and Randy Tedesco ("Defendants") (Docs. 65, 66).[1] Also pending before the Court is a Cross Motion for Summary Judgment ("CMSJ") and memorandum in support filed by Plaintiffs Philip Astrauskas, Sr., Mary Astrauskas, and Philip Astrauskas, Jr. ("Plaintiffs") (Docs. 68, 69). For the reasons set forth below, the Court grants the MSJ. As a result, the Court denies the CMSJ.

---

[1] Defendant John Miller, the Mayor of Collinsville, did not individually participate in the filings by the other Defendants discussed in this Order.

## FACTUAL & PROCEDURAL BACKGROUND

This action involves a challenge to a residential building inspection and subsequent civil suit in the Third Judicial Circuit in Madison County, Illinois, brought by Collinsville alleging code violations as a result of a building inspection. Plaintiffs own a property located at 2106 Vandalia Street in Collinsville ("the property") that consists of multi-family residential units (Docs. 67, 70, 70-1, 70-3). Plaintiffs assert that Collinsville and the other Defendants, who are involved with building and zoning in the City, violated their civil rights when Defendant Daniel Davis trespassed and searched the property. The following series of events and facts provides the relevant context for deciding the motions before the Court.

In April 2017, Davis, the Chief Building Official for Collinsville at the time, performed an inspection of the property without notice to Plaintiffs (Docs. 41; 42; 70-6, p. 6). After the inspection, Davis completed the property inspection form, which states, "[b]elow are the findings of a visual walk through inspection of the exterior and interior of the property identified above" (Doc. 70-3, p. 17). On the form, Davis marked the areas of the building that he inspected and the violations specific to those areas (*Id.*). Specifically, Davis marked that he inspected the roof, gutters/downspouts, chimney, porch/deck, exterior walls, foundation, windows, exterior doors, and electrical wiring (*Id.*). Davis noted issues with the gutters/downspouts, porch/deck, exterior walls, windows, exterior doors, and electrical wiring (*Id.*). Pictures submitted by Plaintiffs and taken by Davis show the areas of the property he inspected that exhibit alleged violations

(Doc. 73-1, pp. 8-15).[2] Astrauskas Sr. stated that he did not think Davis entered the interior of the building while he performed the inspection, and no picture submitted from that day depicts the interior of the building (Docs. 70-2, p. 30; 73-1, pp. 8-15). None of the interior areas on the property inspection form were marked as inspected. (Doc. 70-3, p. 17).

Collinsville filed suit against Plaintiffs in Madison County Court, citing a zoning violation, building code violations, and failure to obtain a landlord business license. (Doc. 70-3, pp. 23-29). Plaintiffs then initiated this suit in June 2018 under 42 U.S.C. 1983, alleging that Defendants violated their Fourth, Fifth, and Fourteenth Amendment rights to the use and enjoyment of the property and the right of notice of inspection (Docs. 1, 41, p. 6). Plaintiffs claim that Davis, "at the instruction of David Bookless, Randy Tedesco, Mitchell Bair, or other person with final policy making authority of the City," entered onto the property without permission for the inspection and did not provide notice of entry (Doc. 41, pp. 6-7). Plaintiffs further allege that Defendants violated their Fifth and Fourteenth Amendment rights when they ignored Collinsville Municipal Code related to administrative procedure for code violations and went straight to state court with a lawsuit on the violations (Doc. 41, p. 13). Plaintiffs contend that Defendants did so in order to exact revenge on Astrauskas Sr. for his speeches at City Council meetings and his campaign activity against members of the Collinsville City Counsel (Doc. 41,

---

[2] Other pictures Plaintiffs included were from a previous inspection on April 4, 2017, related to carbon monoxide issues in the building.

p. 5; Doc. 70-2, pp. 26-27). As relief, Plaintiffs seek compensatory damages, punitive damages, and attorney fees. (Doc. 41, p. 14).

Defendants filed their MSJ in January 2020. Regarding Plaintiffs' Fourth Amendment claim, Defendants assert that Davis never entered the property and, even if he did, he only stayed in the exterior common areas (Doc. 66, p. 7). Defendants maintain that Plaintiffs provided no evidence that Davis entered any locked areas or curtilage of the property (*Id.*). In their response to Defendants' MSJ, Plaintiffs point to the property inspection form, stating that the form references violations that require close range inspection and entry onto the property (Doc. 73, p. 7).

Concerning Plaintiffs' Fifth Amendment claim, Defendants assert that Plaintiffs have failed to establish that a particular municipal policy caused an injury, and the only evidence in the record shows that Collinsville's counsel made the decision to file in state court, meaning that the record is devoid of personal action (Doc. 66, pp. 10, 12). Defendants additionally claim that Plaintiffs provided no evidence that the state court proceeding provided them with less due process than an administrative hearing would have (Doc. 66, p. 12). Plaintiffs counter, stating that the individual Defendants were personally involved in the violation investigation, which precipitated the state court suit (Doc. 73, p. 11). Plaintiffs theorize that the individuals were either acting pursuant to city policy or had final policy making authority (*Id.*). Plaintiffs also contend that counsel could not have initiated suit without Collinsville's approval or information provided by the individual Defendants, but acknowledge that they have not been able to obtain evidence of the scope and degree of decision-making (Doc. 73, pp. 11-12).

Plaintiffs also filed their CMSJ in January 2020, asserting that the undisputed material facts presented in their response to the MSJ merit summary judgment in their favor on the Fourth Amendment claim based on the law (Doc. 69). Defendants' arguments defending against the CMSJ match their arguments from their MSJ.

## LEGAL STANDARD

Summary judgment is "the put up or shut up moment in a lawsuit" where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of the events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere conclusory allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 232-24. While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than

flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)). A merely cognizable issue of fact is insufficient to deny summary judgment, and an opposing party must present sufficient evidence to enable a reasonable jury to render a verdict in its favor. *Anderson*, 477 U.S. at 251–52; *Hobgood v. Illinois Gaming Board*, 731 F.3d 635, 643 (7th Cir. 2013). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

## ANALYSIS

**I.   Count 1:   Fourth Amendment Claim[3]**

### A. Applicable Law

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV. A search occurs if the government trespasses onto constitutionally protected property without a license

---

[3] While Plaintiffs allude to an abridging of Astrauskas Sr.'s First Amendment right to free speech through the retaliation of the Madison County Court action, Plaintiffs have not asserted an actual claim for this allegation in the Complaint.

or a warrant. Administrative inspections are searches within the meaning of the Fourth Amendment. *Montville v. Lewis*, 87 F.3d 900, 902 (7th Cir. 1996); *Camara v. Mun. Ct. of City and Cty. of S.F.*, 387 U.S. 523, 540 (1967). As the United States Supreme Court noted in *United States v. Dunn*, the concept of curtilage is grounded in English common law and jurisprudence in the United States federal courts started to develop a Fourth Amendment protection for curtilage in the early twentieth century. 480 U.S. 294, 300 (1987). Curtilage is "the area outside the home itself but so close to and intimately connected with the home and the activities that normally go on there that it can reasonably be considered part of the home" itself for Fourth Amendment purposes. *Siebert v. Severino,* 256 F.3d 648, 653–54 (7th Cir. 2001) (internal quotations omitted) (quoting *United States v. Shanks*, 97 F.3d 977, 979 (7th Cir. 1996)).

It is well established, though, that Fourth Amendment protections do not apply to areas or articles not within the individual's reasonable expectation of privacy. An individual can invoke the Fourth Amendment's protections only by satisfying two prongs, first that a person has exhibited an actual (subjective) expectation of privacy and, second, that society has accepted the expectation as reasonable. *Katz v. United States,* 389 U.S. 347, 361 (1967) (Harlan, J., concurring). Things knowingly exposed to the public, even in a home or office, are not protected by the Fourth Amendment. *Id.* at 351. For example, an individual does not have a reasonable expectation of privacy from a police helicopter flying over his greenhouse, even when he has obscured most of the greenhouse. *Florida v. Riley,* 488 U.S. 445, 449 (1989). Nor does a government agent violate the Fourth Amendment by viewing anything in plain sight "from a public vantage point

where they have a right to be." *Id.* at 448-49. Government agents may walk up to any part of private property that is otherwise open to visitors or delivery people. *United States v. LePage,* 477 F.3d 485, 488 (7th Cir. 2007). Furthermore, a party claiming a Fourth Amendment violation bears the burden of establishing an invasion of the curtilage, which must be met by including supporting evidence in response to an MSJ. *Harney v. City of Chicago*, 702 F.3d 916, 924-25 (7th Cir. 2012).

### B. Discussion

Count 1 of Plaintiffs' Second Amended Complaint alleges that Defendants violated their Fourth, Fifth, and Fourteenth Amendment rights to the use and enjoyment of the property and the right of notice of inspection (Doc. 41, p. 6). Plaintiffs claim that Defendants entered onto the property without permission for the inspection and without notice of entry (Doc. 41, p. 7). In their response to the MSJ defending the claim, Plaintiffs point to the inspection form as proof that Davis entered their property (Doc. 73, p. 8). Both parties agree that Plaintiffs own the property, which consists of multi-family residential units (Docs. 67, 70). Both parties agree that Davis performed an inspection of the property that day (*Id.*). Additionally, Plaintiffs never claim that Davis entered the interior of the building.

From there, the parties divide on Davis's outdoor proximity and the law. While maintaining that Davis never entered the property, Defendants also work to protect themselves by stating that even if Davis entered the property, his entry did not offend the Fourth Amendment because he only entered common areas. As Plaintiffs highlight, Davis inspected the roof, gutters/downspouts, and chimney, all areas that may

necessitate close inspection on the property (Doc. 70-3, p. 17). Despite this, Defendants bring a salient point to the table. There is no reasonable expectation of privacy for common areas of a multi-family residential building. *See Harney*, 702 F.3d at 925. Furthermore, "a government agent is permitted to enter the curtilage of the home in the same way that any delivery person or passerby could: the agent may approach any entrance to the house that is open to visitors (even if it is not the front door) and make warrantless observations of the exterior." *Davis v. Chalstrom*, 595 Fed. App'x 627, 630 (7th Cir. 2014) (collecting cases). The undisputed material facts and pictures in the record here establish an understanding of the zone in which Davis operated when he inspected the property, which was wholly outside of the interior of the building. Thus, there is no reasonable expectation of privacy for Plaintiffs to rely on and, because there was no deprivation of a constitutional right, no notice was required. Based on the law applied to those facts, Count 1 fails.

Furthermore, as Defendants argue, the individually named Defendants are entitled to qualified immunity for the inspection. Qualified immunity shields government officials performing discretionary functions from civil litigation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When determining whether a public official is entitled to qualified immunity in a § 1983 action, courts undertake a two-prong inquiry. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014); *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). The first prong raises the question as to whether the facts show the violation of a constitutional right (here, the Fourth Amendment). *Id.* The second prong asks whether a plaintiff's constitutional rights were clearly established at the time of the officers'

actions. *Id*. In this case, that determination depends on whether the state of the law gave Defendants fair warning that the warrantless search of the property was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

A right is clearly established if a "court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Wernsing v. Thompson*, 423 F.3d 732, 742 (7th Cir. 2005). As the Supreme Court has explained, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope,* 536 U.S. at 739 (citations omitted).

The state of the law at the time of the inspection was, as it is today, that the surrounding property that was common area was not considered curtilage. Consequently, there could be no apparent unlawfulness associated with the individually named Defendants' actions, even if the facts showed a violation of a constitutional right. Accordingly, Defendants would also be entitled to qualified immunity and their MSJ with respect to Count 1 is **GRANTED**. Consequently, Plaintiffs' CMSJ is **DENIED**.

## II. Count 2: Fifth Amendment Claim

### A. Applicable Law

The Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, provides in relevant part that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. V. Property interests "are not created by the Constitution. Rather, they are

created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In order to ascertain whether the application of due process requirements is necessary to a case, courts "look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." *Id.* at 570–71.

### B. Discussion

Count 2 of Plaintiffs' Second Amended Complaint alleges that Defendants violated their Fifth and Fourteenth Amendment rights to due process (Doc. 41, p. 13).[4] Plaintiffs allege that Defendants ignored Collinsville Municipal Code and went straight to state court with a lawsuit on the violations (Doc. 41, p. 13). Defendants do not deny the filing of the state court action absent municipal administrative adjudication. Plaintiffs contend that Defendants did so to retaliate against Astrauskas Sr. for his political activity (Doc. 41, p. 5).

A municipality is not liable under § 1983 unless the constitutional violations at issue are caused by a municipal policy or custom. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Furthermore, there is no *respondeat superior* liability for municipalities under § 1983. *Belcher v. Norton*, 497 F.3d 742, 754 (7th Cir. 2007). But even before assessing whether the undisputed material facts lead to Plaintiffs' claim of municipal policy or custom that caused their injury, the Court must analyze whether

---

[4] Count 1 in Plaintiffs' Second Amended Complaint also contains allegations of a Fifth Amendment violation, presumably because Defendants did not provide notice of the inspection. This section explains Fifth Amendment guarantees and limitations for the purposes of Count 1 as well.

there is a cognizable constitutional injury here. *See Matthews v. City of East St. Louis*, 675 F.3d 703, 709 (7th Cir. 2012) (where plaintiff fails to establish a constitutional violation, *Monell* claims must also fail). A procedural due process claim requires a two-fold analysis. First, the court must determine whether the plaintiff was deprived of a protected interest; second, the court must determine what process is due. *Leavell v. Ill. Dep't of Natural Res.*, 600 F.3d 798, 804 (7th Cir. 2010) (citing *Pugel v. Bd. of Trustees of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004)). Due process requires notice and an opportunity for a hearing before the government may deprive a person of property. *Mathews v. Eldridge*, 424 U.S. 319, 348-49 (1976).

In terms of deprivation, Plaintiffs claim that they had a right to the protections of the Collinsville Municipal Code and a hearing in Collinsville City Court. Despite this contention, a violation of state law, or even a municipality's violation of its own codes or procedures, is not a denial of a federal constitutional right on its own, even if that law confers a procedural right. *Osteen v. Henley,* 13 F.3d 221, 225 (7th Cir. 1993); *Christian v. Village of Maywood*, 656 F. Supp. 367, 369 (N.D. Ill. 1987) (citing *Muckway v. Craft*, 789 F.2d 517, 522 (7th Cir. 1986); *Albery v. Reddig,* 718 F.2d 245, 251 (7th Cir. 1983)). The remedy in these cases is almost invariably state court. *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 165 (7th Cir. 1994); *Archie v. City of Racine*, 847 F.2d 1211, 1215 (7th Cir. 1988).

The Seventh Circuit has repeatedly held that, to prevail on a procedural due process claim, a plaintiff must point out a deprivation from a property interest or state-created liberty interest. *Crenshaw v. Baynerd,* 180 F.3d 866, 869 (7th Cir. 1999); *see also Roth,* 408 U.S. at 577, (1972); *Ky. Dep't of Corrs. v. Thompson,* 490 U.S. 454, 459–62 (1989). After

all, the Federal Courts are courts of limited jurisdiction and should exercise judicial restraint when cases do not invoke the powers given by the Constitution or Congress. *See Groves v. U.S.*, 941 F.3d 315, 323 (7th Cir. 2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998)). Plaintiffs here have done nothing more than assert the alleged right to an administrative proceeding under Collinsville Municipal Code. A nebulous accusation of indiscriminate prosecution does not change this finding. The mere expectation of receiving a certain process under a code simply does not establish a protected liberty or property interest. *See Crenshaw,* 180 F.2d at 869; *see also Campbell v. City of Champaign,* 940 F.2d 1111, 1113 (7th Cir.1991); *Lim v. Cent. DuPage Hosp.,* 871 F.2d 644, 648 (7th Cir. 1989).

Even if Plaintiffs were able to establish that they had a protected liberty or property interest, the claim would still fall short because Plaintiffs received all the process that was due to them. "The barebones constituents of fair procedures and therefore due process are . . . notice and an opportunity to be heard." *Smith v. Shettle,* 946 F.2d 1250, 1254 (7th Cir.1991) (citing *Twining v. New Jersey,* 211 U.S. 78, 110–11 (1908)). Put another way, "[t]he Due Process Clause requires that individuals have an opportunity to be heard 'at a meaningful time and in a meaningful manner' regarding the deprivation of life, liberty, or property." *Wainscott v. Henry,* 315 F.3d 844, 852 (7th Cir. 2003) (quoting *Mathews,* 424 U.S. at 333). In this case, Plaintiffs received their due process rights in the form of the current suit in Madison County Court and they are not entitled to anything else. Plainly stated, an extra bite at the candied apple is not appropriate given the claims here. The MSJ with respect to Count 2 is **GRANTED**.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 65). Plaintiffs' Cross Motion for Summary Judgment (Doc. 68) is **DENIED**, and this entire action is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

DATED:   September 22, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**